UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY J. SIMKINS,

      Plaintiff,                    Civil Action No. 15-12731

v.                            HON.  SEAN F. COX
                                 U.S. District Judge
                                 HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Anthony J. Simkins ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further administrative proceedings, and that Defendant's Motion for Summary Judgment be DENIED.

# I. PROCEDURAL HISTORY

On March 28, 2012, Plaintiff filed an application for DIB, alleging disability as of May 10, 2003 (Tr. 150). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 26, 2013 in Toledo, Michigan before Administrative Law Judge ("ALJ") Ryan Johannes[1] (Tr. 36). Plaintiff, unrepresented, testified (Tr. 42-58), as did Vocational Expert ("VE") Charles McBee (Tr. 58-64). On February 20, 2014, ALJ Johannes found that Plaintiff was not disabled on or before the December 31, 2008 expiration of DIB benefits (Tr. 30-31). On May 19, 2015, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision in this Court on July 27, 2015.

On February 23, 2016, Defendant Commissioner filed a motion to dismiss, arguing that Plaintiff's July 27, 2015 filing was outside the 60 days allowed to commence judicial review under 42 U.S.C. 405(g). *Docket #12.* On June 23, 2016, the Honorable Sean F. Cox adopted my recommendation to deny Defendant's motion for dismissal. *Docket #15, 19.*

# II. BACKGROUND FACTS

Plaintiff, born August 6, 1967, was 41 on the date last insured ("DLI") of December 31, 2008 and 46 when the ALJ issued his decision (Tr. 31, 150). He completed two years of college and worked previously as a fabricator and mill wright (Tr. 179). He alleges

---

[1]

The original hearing of September 19, 2013 was adjourned to give Plaintiff additional time to find an attorney (Tr. 66-73).

disability due to diabetes, bone spurs of the bilateral feet, right eye blindness, left shoulder rotator cuff damage, right shoulder nerve damage, neuropathy of the feet, arthritis, bladder problems, and lower back and hip ligament damage (Tr. 178).

## A. Plaintiff's Testimony

Plaintiff offered the following testimony.

He lived in Adrian, Michigan, stood 5' 7", and weighed 223 pounds (Tr. 43). He was left-handed (Tr. 44). He lived with his wife and 10-year-old daughter (Tr. 43). He drove himself to the hearing but generally limited his driving to short distances (Tr. 43). He had medical insurance (Tr. 44). Since becoming disabled in May, 2003, he ran "a small hotrod camp" in 2011 for four hours every Saturday (Tr. 44). His last full-time work was as a fabricator in 2003 (Tr. 44). In 2003, his employer let him go due to limitations brought on by neuropathy of the feet, "sugar issues," and injuries from both a workplace accident and an automobile collision (Tr. 45). He received Workers' Compensation benefits (Tr. 45).

The vehicle accident resulted in torn hip and back ligaments and shattered a bone in his back (Tr. 46). He experienced hip pain upon even minimal activity and one leg was shorter than the other (Tr. 46). The right eye blindness caused him to overwork the left eye, resulting in "starbursts" in his vision (Tr. 46). He continued to experience foot pain and stiffness and ankle swelling due to neuropathy (Tr. 46). He also experienced left shoulder pain due to the vehicle accident and right shoulder joint problems (Tr. 47). Due to intestinal damage and diabetes, he experience chronic constipation (Tr. 48). Both wrists tended to "fall

asleep" after overuse due to prior wrist fractures (Tr. 48).

*The ALJ then directed Plaintiff to discuss his condition prior to the DLI of December 31, 2008* (Tr. 48).

Plaintiff underwent up to 27 steroid injections to the spine in 2004 and 2005 (Tr. 48). At the same time, he treated with a chiropractor on a regular basis (Tr. 48). The right eye blindness, beginning in 1993, was attributable to diabetes (Tr. 49). As of 2003, he was able to stay on his feet for a maximum of two hours a day before experiencing heaviness and numbness (Tr. 49). He underwent October, 2002 arthroscopic surgery to repair the rotator cuff tear sustained in the June, 2002 accident (Tr. 50-51). He had not been treated for depression between May, 2003 and December, 2008 due to "[lack of] funding" (Tr. 52).

Between May, 2003 and December 31, 2008 ("relevant period") he experienced hand numbness and gripping problems but did not experience medication side effects other than constipation (Tr. 52). He denied the use of alcohol or marijuana (Tr. 53). During the relevant period, he was able to take care of his personal needs, prepare meals, wash "some dishes," vacuum, and use a computer for about an hour every day (Tr. 54). He was unable to do laundry, grocery shop, or do significant yard work (Tr. 54-55). He spent most of his time caring for his diabetic daughter (Tr. 55). He was unable to walk more than a quarter of a mile, stand for more than two hours, or sit for more than one (Tr. 56). He was unable to lift more than 15 pounds (Tr. 56). He experienced significant weakness when reaching overhead and problems gripping (Tr. 57).

**B.      Medical Evidence**[2]

**1.  Treating Sources**

A January, 2003 MRI of the lumbar spine was "fairly unremarkable" (Tr. 330). April, 2003 imaging studies of the right foot showed only minimal degenerative changes of the first toe (Tr. 328). In August, 2003, Plaintiff noted that his vision had been stable in the past year (Tr. 257). In January, 2004, Steven N. Gross, D.O. examined Plaintiff, advising him to avoid "a great deal of bending or lifting (Tr. 396). Plaintiff exhibited full muscle strength with a normal knee and and ankle motion (Tr. 395). In March, 2004, Plaintiff sought treatment for a head cold (Tr. 355)

March, 2005 treating records by Jody Rhames, M.D. note tenderness and a reduced range of right shoulder motion (Tr. 352). May and September, 2005 records state that Plaintiff's health was stable despite lower back pain (Tr. 383-384). Paul Shapiro, M.D. administered epidural injections (Tr. 384). Treating notes for August, 2005 state that Plaintiff planned to resume motocross cycling to stay in shape (Tr. 385). October, 2005 physical therapy records states that Plaintiff experienced increased lower back pain with activity (Tr. 382). He was diagnosed with chronic lower back pain "without radiculopathy"

---

[2]

Discussion of the evidence pertaining to Plaintiff's condition before the alleged onset of disability date of May 10, 2003 and after the DLI of December 31, 2008 is included for background purposes only. Treatment for medical conditions unrelated to the application for DIB benefits, while reviewed in full, are omitted from mention here.

(Tr. 382). Dr. Shapiro administered six steroid injections to the lower back (Tr. 382). December, 2005 physical therapy records state that Plaintiff's lower back condition was "much better" with only "one episode" of sciatica (Tr. 380-381).

January, 2007 records state that Plaintiff completed one month of physical therapy (Tr. 349). In April, 2007, Plaintiff was treated for athlete's foot, and the following month experienced sunburn of the top of the feet while mowing the yard (Tr. 347-348). May, 2007 imaging studies of the right foot showed soft tissue swelling (Tr. 302). July, 2007 chiropractic records state that Plaintiff was a candidate for "intensive" care consisting of three sessions a week for 12 weeks (Tr. 260). Chiropractor Dr. Sullivan observed a "slight right lumbar list" and "slight pelvic unleveling" on the left (Tr. 261). December, 2007 ophthalmological records note Plaintiff's report of good left eye vision without "floaters" (Tr. 254). Examination records (including February, 2009 records) 20/25 vision on the left (Tr. 254, 339, 340). Plaintiff continued to receive intermittent chiropractic treatment until mid-2008 for the conditions of fatigue, neck pain, stiffness, and numbness and tingling of both hands (Tr. 263, 268). An October, 2008 stress test showed an unremarkable ejection fraction (Tr. 270). Ophthalmologist Charles K. Dabbs, M.D. reported that Plaintiff was "doing well" (Tr. 334).

Dr. Rhames' December, 2009 records state that Plaintiff was writing a "screen play" (Tr. 344). In March, 2010, Plaintiff reported that his vision had remained stable since a February, 2009 examination (Tr. 338). Chiropractic records from January, 2014 were

negative for recent fractures but the presence of degenerative disc disease (Tr. 417). The records note the symptoms of fatigue of the lower back and hands; hand numbness and pain; and neck, back, and leg pain (Tr. 419).

The same month, Dr. Dabbs noted the left eye had a Posterior Chamber Intraocular Lens Implantation ("PCIOL") with "limited visual fields secondary to diabetic retinal ischemic and laser treatment" (Tr. 421). He noted that Plaintiff "best-corrected vision" was 20/30 (Tr. 421). He noted that Plaintiff also experienced Charles Bonnet syndrome of the left eye[3] (Tr. 421). Dr. Dabbs found that Plaintiff was "permanently visually disabled and no improvement [was] expected."

## 2. Non-Treating Sources

In May, 2012, Saada Abbas, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding insufficient evidence through December 31, 2008 to make a disability finding (Tr. 75-80).

In December, 2013, R. Scott Lazzara, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of disability due to uncontrolled diabetes, lower back and hip problems, right eye blindness, bilateral shoulder problems, neuropathy of the feet, and arthritis (Tr. 369, 404). Plaintiff reported that he sustained injuries in a 1991

---

[3] Charles Bonnet Syndrome, associated with diabetic retinopathy, "causes vivid, complex, recurring visual hallucinations, usually . . . in older adults with later-life vision loss." http://www.visionaware.org/info/your-eye-condition/guide-to-eye-conditions/charles-bonnet-syndrome/125. (Last visited, May 12, 2017).

motorcycle accident and was again injured in a 2002 accident resulting in right shoulder and lower back problems (Tr. 369). He admitted that he was able to drive, do household chores, and spend time "filming with a friend" (Tr. 370). He reported that he could stand or sit for around one hour, walk a mile, and lift 40 pounds "to the waist but [not] overhead" (Tr. 370). He exhibited a slightly reduced range of bilateral shoulder, knee and lumbar spine motion (Tr. 371, 373). Dr. Lazzara found that Plaintiff did not require the use of a cane (Tr. 373).

Dr. Lazzara also completed an assessment of Plaintiff's work-related abilities, finding that he could lift up to 20 pounds occasionally (up to 50 on the right); sit for six hours in an eight-hour workday and stand, or walk for four hours (Tr. 364). He found that Plaintiff would need to change position once an hour (Tr. 364). He limited Plaintiff to occasional reaching overhead and push/pulling (Tr. 365). He also found that Plaintiff could climb, balance, stoop, knee, and crouch on an occasional basis (Tr. 366). Dr. Lazarra precluded all crawling (Tr. 366). He found that due to right-eye blindness, Plaintiff was unable to read small print (Tr. 366). Dr. Lazarra precluded all exposure to unprotected heights, extreme cold, and moving mechanical parts (Tr. 367). He limited Plaintiff to occasional driving, exposure to extreme heat, operating a motor vehicle, and vibration (Tr. 367). He found no limitation in activities of daily living (Tr. 368, 403).

## C.    Vocational Expert Testimony

VE McGee classified Plaintiff's past relevant work as a stock-parts fabricator as

semiskilled and exertionally medium[4] (Tr. 239). The ALJ then posed the following set of restrictions, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [A]ll the functions of light exertional work; occasionally climb stairs and ramps; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; can frequently reach above the shoulder and handle; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, et cetera; is able to perform work that does not require bilateral depth perception for visual acuity or accommodation . . . . due to single-eyed vision. Would such a person be able to perform the Claimant's past relevant work? (Tr. 61).

Based on the above restrictions, VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the light, unskilled jobs of a palletizer (1,500 positions in the regional economy); bagger of garments (2,000); and shipping and receiving weigher (1,500-2,000) (Tr. 62). The VE testified that if the same individual were limited to sedentary rather than exertionally light work, he could perform the work of a telephone quotation clerk (1,500-2,000); table worker (1,000); and document preparer (10,000) (Tr. 62-63). The VE stated that the need for a sit/stand "at will" option would not change the sedentary job numbers (Tr. 63). He testified that the need to be off task for 20 percent or more of the workday, or, more than one absence each month would

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

preclude all work (Tr. 64).

The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* except for his finding regarding a sit/stand option which was based on his own professional experience (Tr. 61, 63).

### D.    The ALJ's Decision

Citing Plaintiff's treating records, ALJ Johannes found that Plaintiff experienced the severe impairments of "lumbar degenerative disc disease, cervical degenerative disc disease, right eye blindness, diabetes mellitus, and residuals of right shoulder injury" but that none of the impairments met or equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24-25). The VE found that on or before the date last insured of December 31, 2008, Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> [O]ccasionally climb stairs and ramps; occasionally stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; frequently reach above the shoulder and handle; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.; must perform work that does not require bilateral depth perception, or visual acuity, or accommodation due to single eye vision (Tr. 25).

Citing the VE's findings, the ALJ found that while Plaintiff was unable to perform his past relevant work, he could perform the exertionally light, unskilled work of a palletizer, bagger of garments, and shipping and receiving weigher (Tr. 30, 62).

The ALJ discounted Plaintiff's allegations of limitation. He noted that a January, 2003 MRI of the lumbar spine was unremarkable and that May, 2008 treatment notes showed only mild lumbar spine abnormalities (Tr. 27). The ALJ observed "a break in chiropractic treatment from May, 2008 to January, 2014" and that the recent records showed only "routine and conservative treatment" (Tr. 27). He commented that Plaintiff had "relatively little medical treatment for the allegedly disabling impairments" despite having health insurance for the past 18 years (Tr. 29). He noted that while Plaintiff experienced right eye blindness, the left eye vision was "good" (Tr. 27). He cited Plaintiff's admission to Dr. Lazzara that he could lift up to 40 pounds, drive, and perform activities of daily living (Tr. 28). The ALJ noted that while Dr. Lazzara conducted the examination in December, 2013 (five years after the expiration of benefits) Plaintiff [did] not assert that his physical abilities [had] improved since the date last insured" (Tr. 28).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff argues first that the ALJ erred by rejecting Dr. Dibbs' January, 2014 finding of permanent disability due to vision problems. *Plaintiff's Brief,* 16-18, *Docket #24,* Pg ID 581 (*citing* Tr. 28, 421).  He contends that instead of simply discounting the disability opinion, the ALJ was required to recontact Dr. Dibbs' for "clarification" of the treating findings.  *Id.*

"[I]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)*(citing Wilson,* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, see *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(c)(2))[5].  The failure to articulate "good reasons" for rejecting a treating physician's

_____

[5]

In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2)

opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013).

"[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

In support of the rejection of the "disability" opinion, the ALJ cited Dr. Dibbs' February, 2009 records that Plaintiff's left eye vision was "good" approximately one month following the DLI of December 31, 2008 (Tr. 27). The ALJ then addressed Dr. Dibbs' January, 2014 that Plaintiff was disabled as a result of vision problems:

> No weight is given to Dr. Dabbs' opinion regarding the claimant's employability, as this is an issue reserved to the Commissioner. . . . However, some weight is given to his opinion regarding the claimant's visual acuity, as he is a treatment provider with a longitudinal treatment history and his opinion is consistent with his treatment notes and the claimant's credible testimony. Dr. Dabbs first began treating the claimant in 1996, and has continued to this date. His treatment notes indicate that the claimant's right eye has required a prosthetic since 2007. . . . Nonetheless, the claimant's visual limitation was accounted for in the [assessed] residual functional capacity outlined above (Tr. 28).

---

"frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

In the RFC, the ALJ included a restriction to "work that does not require bilateral depth perception, or visual acuity, or accommodation due to single eye vision" (Tr. 25).

The ALJ's rationale for rejecting Dr. Dibbs' January, 2014 disability opinion is well supported and explained. The Commissioner, not a treating source, is responsible for deciding whether a claimant meets "the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). While a treating source opinion regarding a claimant's *medical condition* is entitled to deference, the SSA "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." § 404.1527(d)(3)(emphasis added). The ALJ noted that in contrast to Dr. Dibbs' disability opinion, his treating records for the relevant period showed "good" left eye vision (Tr. 27). Plaintiff cites a number Dr. Dibbs records for the relevant period. *Plaintiff's Brief* at 17 (*citing* Tr. 254-257, 331-340, 420-421). However, these records generally undermine rather support the allegations of disabling vision problems: (Tr. 254)(denied "flashers" or "floaters" in left eye vision), (Tr. 255)(rare or occasional floaters), (Tr. 256)(no floaters), (Tr. 256)(no ocular pain or floaters), and approximately one month after the DLI (Tr. 234)(doing well).

Plaintiff's argument that the ALJ was required to recontact Dr. Dibbs for "clarification" of the treating opinion is not well taken. To be sure, "after weighing the evidence," the ALJ may seek "additional evidence or clarification" if s/he "cannot reach a conclusion about whether" the claimant is disabled. 20 C.F.R. § 404.1520b(c)(1). However, recontacting a medical source is appropriate "only if the evidence received from that source

is inadequate for a disability determination," *DeBoard v. CSS*, 2006 WL 3690637, *5 (6th Cir. December 15, 2006); § 404.1512(e) and that "[a]bsent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. CSS,* 2008 WL 828861, *4 (W.D. Mich. March 26, 2008)(*citing Johnson v. Barnhart*, 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005)). Dr. Dibbs' treating records for the relevant period amply support the finding that visual problems did not preclude all work. As such, the ALJ was not obliged to recontact Dr. Dibbs.[6]

For overlapping reasons, Plaintiff's contention that the ALJ misquoted Dr. Rhames' findings regarding the vision problems does not provide grounds for remand. Plaintiff takes issue with the ALJ's statement that Dr. Rhames diagnosed Plaintiff "as legally blind in his right eye." *Plaintiff's Brief* at 17 (*citing* Tr. 27, 341). While Dr. Rhames, a general practitioner, listed "legally blind" among Plaintiff's "active problems" at a December, 2011 examination, the "legally blind" statement is followed by "right eye prosthesis" (Tr. 341). Dr. Rhames' findings do not mention left eye vision problems much less suggest that Plaintiff experienced legal blindness in both eyes. Moreover, Dr. Dibbs' records for the relevant period showing 20/30 vision in the left eye do not meet the statutory definition of blindness which requires 20/200 central visual acuity "or less of the better eye." *See Williams v. Comm'r of Soc. Sec.*, 93 F. App'x 34, 36, 2004 WL 445184 (6th Cir. March 9,

---

[6]Moreover, it is unclear whether the disability opinion, composed in January, 2014, pertains to Plaintiff's condition on or before the DLI of December 31, 2008.

2004)(*citing* 42 U.S.C. § 416(i)(1)(B); 20 C.F.R. § 404.1581).  More obviously, Plaintiff's ability to drive, mow the lawn, run a hotrod camp, and care for his daughter during the relevant period belies his claim that the treating physician found him legally blind in both eyes.

As such, the ALJ's statement that Dr. Rhames found Plaintiff "legally blind" in only the right eye does not constitute a misstatement of the record.

### B.  The Credibility Determination and SSR 96-8p

In his second argument, Plaintiff argues that the ALJ's credibility determination is tainted by the ALJ's failure to consider the limiting effects of Charles Bonnet syndrome, bilateral neuropathy of the feet, and obesity.  *Plaintiff's Brief* at 19-20.   In his third argument, Plaintiff revisits his claim that the ALJ did not adequately consider the same conditions in crafting the RFC.  *Plaintiff's Brief* at 20-22.  He contends that as a result, the RFC does not reflect his full degree of limitation.  *Id.*

The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[7]  As a threshold matter, the adjudicator must consider whether

---

[7]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, below. Nonetheless, SSR 96-7p applies to the present determination, decided on May 11, 2015. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996).[8]  In the instance that a claimant is found to be obese, the Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02–1p, 2002 WL 34686281, *3 (June 21, 2002).  SSR 02–1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of CSS*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).

Plaintiff's October, 2008 BMI of 32.7 places him in the obese range[9] (Tr. 272). However, the administrative decision does not contain reference to the condition.  The ALJ's failure to discuss obesity at Step Two, by itself, does not constitute reversible error.  *See*

---

[8]

In addition to an analysis of the medical evidence, 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:  (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

[9]https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.  (Last visited May 16, 2017).  Earlier records created during the relevant period show an even higher BMI (Tr. 345).

*Pompa v. CSS*, 73 Fed.Appx. 801, 803, 2003 WL 21949797, * 1 (6th Cir. August 11, 2003)(omission of an impairment causing work-related limitations at Step Two is of "little consequence," provided that ALJ considers "all impairments" in crafting the RFC). But it is the ALJ's failure to consider obesity in crafting the RFC that provides grounds for remand. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The analysis must include the non-exertional limitations. 20 C.F.R. § 404.1545. At a minimum, the ALJ must "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. CSS*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS*, 251 F.3d 153, slip op., 5 (Table)(3rd Cir. December 19, 2000))(punctuation added). The lack of reference to Plaintiff's obesity is of particular concern, given the probable effect of obesity on the conditions of diabetes mellitus with the complications of retinopathy and neuropathy, his degenerative disc disease and back injuries, and his shoulder problems. The ALJ's failure to identify the condition in either the credibility analysis or in composing the RFC requires a remand for further analysis.[10]

---

[10]    While Plaintiff also argues that the ALJ did not consider the conditions of Charles Bonnet syndrome and bilateral neuropathy of the feet, the ALJ provided an adequate discussion of the relevant ophthalmological records and acknowledged Dr. Dibb's diagnosis

The lack of reference to obesity in the RFC discussion is coupled with other errors. For example, while Dr. Lazzara limited Plaintiff to walking or standing for four hours in an eight-hour workday with a sit/stand option, the ALJ provided no rationale for his finding that Plaintiff was capable of walking or standing for *six* hours in eight (Tr. 25, 28, 364). The question of whether Plaintiff can walk four (with a sit/stand option) or six hours a day is particularly critical, given that exertionally light work as found in the RFC requires walking up to six hours a day. In performing light work, "the weight lifted may be very little," so long as a "good deal of walking or standing" is involved. 20 C.F.R. § 404.1567(b). None of the medical records or Plaintiff's description of his own activities can be interpreted to state that he is capable of walking up to six hours in an eight-hour workday.

Likewise, while Dr. Lazarra found that Plaintiff was limited to occasional overhead reaching due to shoulder problems, the ALJ failed to provide an explanation for the RFC for *frequent* rather than occasional overhead reaching (Tr. 25, 28, 365). While I am mindful that the VE testified that an individual of Plaintiff's education, age, and work experience would be capable of a range of sedentary work with a sit/stand option (Tr. 62-63), an additional limitation to occasional overhead reaching (as found by Dr. Lazzara) raises the question of whether a significant number of sedentary jobs exist for an individual with some degree of manipulative limitation. *See* SSR 96-9p, 1996 WL 374185,*8 (July 2, 1996) "*Any* significant

---

of Charles Bonnet syndrome (Tr. 27-28). The ALJ discussed the allegations of neuropathy (Tr. 26-27), but noted that Dr. Lazzara found only "mild difficulty" with heel and toe walking (Tr. 28).

manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." (Emphasis added). Although the ALJ was not required to adopt Dr. Lazzara's consultative opinion, none of the other medical records or testimony supports the finding that Plaintiff could reach overhead for up to two-thirds of an eight-hour workday (Tr. 365). Moreover, while the ALJ accorded only "partial weight" to Dr. Lazzara's findings, it appears that the ALJ discounted those findings only to the extent that they were a "current" assessment rather than an evaluation of Plaintiff's limitations during the relevant period (Tr. 28). The ALJ did not provide any rationale for his alternative finding that Plaintiff was capable of walking six hours a day and performing frequent overhead reaching.

Although the ALJ concluded that Dr. Lazzara's opinion supported an RFC for light work, it is unclear that Dr. Lazzara's findings of the inability to walk for more than four hours, a sit/stand option, and a limitation in manipulative abilities allows for either light or sedentary work. Accordingly, a remand for further administrative proceedings is appropriate on this basis as well.

While a remand to the administrative level is warranted for the above-discussed reasons, I decline to recommend a remand for an award of benefits. An award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. HHS*, 17 F.3d 171, 176 (6th Cir. 1994). While the transcript shows that Plaintiff experiences multiple,

significant conditions, a remand for benefits prior to the resolution of the unresolved factual issues would be premature. As such, I recommend a remand for further administrative proceedings consistent with the above discussion.

## VI. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further administrative proceedings, and that Defendant's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 18, 2017

## CERTIFICATE OF SERVICE

I hereby certify on May 18, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen